# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 27 2017, 8:06 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark Benner,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | July 27, 2017<br><br>Court of Appeals Case No.<br>71A03-1607-CR-1609<br><br>Appeal from the St. Joseph<br>Superior Court<br><br>The Honorable Jeffrey L. Sanford,<br>Judge<br><br>Trial Court Cause No.<br>71D03-1511-FC-9 |

**Altice, Judge.**

**Case Summary**

[1] The State charged Mark Benner with two counts of child seduction, one as a Class C felony and one as a Class D felony. Benner filed a motion to dismiss the charges, which the trial court denied. In this interlocutory appeal, Benner argues that to convict him of child seduction as charged would violate the Ex Post Facto Clause of the Indiana Constitution, and alternatively, that the section of the child seduction statute under which he was charged is unconstitutionally vague.

[2] We affirm.

## Facts & Procedural History

[3] Benner was an assistant girls basketball coach at Mishawaka High School beginning with the 2009-2010 season. Benner was not employed in any other position at Mishawaka High School. For the 2012-2013 basketball season, P.A. was a junior at Mishawaka High School and a member of the basketball team. In March 2013, after the close of the basketball season, Benner resigned from his coaching position. Shortly thereafter, Benner met up with P.A. and they kissed for the first time.[1] Their relationship progressed from kissing to fondling and oral sex. From August 2013 to January 2014, Benner and P.A. engaged in sexual intercourse several times. At the time, Benner was around forty-four years old and P.A. was sixteen or seventeen years old.

---

[1] P.A. stated that there was no physical relationship between her and Benner while he was the assistant basketball coach.

[4] On November 20, 2015, the State charged Benner with two counts of child seduction. Count I was charged as a Class D felony and alleged that "[b]etween July 1, 2013 and January 9, 2014," Benner, "having had a professional relationship with [P.A.]," engaged in fondling or touching with P.A. with the intent to arouse or satisfy the sexual desires of either Benner or P.A. *Appellant's Appendix Vol. 2* at 60; *see* Ind. Code § 35-42-4-7(n), (p)(1). Count II was charged as a Class C felony and alleged that "[b]etween August 1, 2013 and January 9, 2014," Benner, "having had a professional relationship with [P.A.]," engaged in sexual intercourse or deviate sexual conduct with P.A. *Appellant's Appendix Vol. 2* at 60; *see* I.C. § 35-42-4-7(n), (p)(2).

[5] Benner filed a motion to dismiss both charges on February 23, 2016, claiming that to convict him of child seduction as charged would violate the prohibition against ex post facto laws. Benner filed a supplemental motion to dismiss on April 25, 2016, alleging as an alternative ground for dismissal that the section of the child seduction statute under which he was charged was unconstitutionally vague. The State filed responses in opposition to Benner's motions to dismiss. The trial court held a hearing on the motions on May 27, 2016, and subsequently issued an order denying Benner's request to dismiss the charges.

[6] On June 9, 2016, Benner filed a Motion to Certify Interlocutory Order for Appeal, which the trial court granted on June 21, 2016. This court accepted Benner's Motion to Accept Jurisdiction Over Interlocutory Appeal on August 23, 2016. Additional facts will be provided as necessary.

**Discussion & Decision**

[7] Benner argues that the trial court erred in denying his motion to dismiss the child seduction charges. As he did before the trial court, Benner contends that to convict him of child seduction would violate the prohibition against ex post facto laws. He also argues that the section of the child seduction statute under which he was charged is unconstitutionally vague.

[8] When a statute is challenged as an alleged violation of the Indiana Constitution,[2] the statute stands before us clothed with the presumption of constitutionality until that presumption is clearly overcome by a contrary showing. *Wallace v. State*, 905 N.E.2d 371, 378 (Ind. 2009) (citing *State v. Rendleman*, 603 N.E.2d 1333, 1334 (Ind. 1992)). The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. *Id*.

[9] The Indiana Constitution provides that "[n]o ex post facto law . . . shall ever be passed." Ind. Const. art. I, § 24. In general, the Ex Post Facto Clause forbids laws imposing punishment for an act that was not otherwise punishable at the time it was committed or imposing additional punishment for an act then proscribed. *Wallace*, 905 N.E.2d at 377. "The critical question in evaluating an

---

[2] Benner also references the Ex Post Facto Clause of the United States Constitution but does not provide a separate argument thereunder. In any event, because the ex post facto analysis is the same under both Indiana law and the federal Constitution, the result is the same. *See Spencer v. O'Connor*, 707 N.E.2d 1039, 1042 (Ind. Ct. App. 1999), *trans. denied*.

ex post facto claim is whether the law changes the legal consequences of acts completed before its effective date." *Sewell v. State*, 973 N.E.2d 96, 102 (Ind. Ct. App. 2012) (quotation omitted). "The fact that an element of a crime draws upon antecedent facts does not make" a statute an ex post facto law. *Id.* (quotation and citation omitted). Underlying the Ex Post Facto Clause is the desire to give people fair warning of the conduct that will give rise to criminal penalties. *Wallace*, 905 N.E.2d at 377 (citing *Armstrong v. State*, 848 N.E.2d 1088, 1093 (Ind. 2006)).

[10] The child seduction statute was amended by the Indiana General Assembly during the 2013 legislative session and such amendment became effective on July 1, 2013. P.L. 208-2013, § 8. As pertinent here, the amendment added subsection (n), which provides:

> A person who:
>
> (1) has or had a professional relationship with a child at least sixteen (16) years of age but less than eighteen (18) years of age whom the person knows to be at least sixteen (16) years of age but less than eighteen (18) years of age;
>
> (2) may exert undue influence on the child because of the person's current or previous professional relationship with the child; and

(3) uses or exerts[3] the person's professional relationship to engage in sexual intercourse, other sexual conduct (as defined in IC 35-31.5-2-221.5), or any fondling or touching with the child with the intent to arouse or satisfy the sexual desires of the child or the person;

commits child seduction.

I.C. § 35-42-4-7.[4] The 2013 amendment also added as I.C. § 35-42-4-7(i), which defines a "professional relationship" as being a relationship with a child "if . . . the person . . . is employed in a position in which counseling, supervising, instructing, or recruiting children forms a significant part of the employment" and "the person has a relationship with a child that is based on the person's employment."

---

[3] Subsection (o) provides:

> In determining whether a person used or exerted the person's professional relationship with the child to engage in sexual intercourse, deviate sexual conduct, or any fondling or touching with the intent to arouse or satisfy the sexual desires of the child or the person under subsection (n), the trier of fact may consider one (1) or more of the following:
>
> (1) The age difference between the person and the child.
>
> (2) Whether the person was in a position of trust with respect to the child.
>
> (3) Whether the person's conduct with the child violated any ethical obligations of the person's profession or occupation.
>
> (4) The authority that the person had over the child.
>
> (5) Whether the person exploited any particular vulnerability of the child.
>
> (6) Any other evidence relevant to the person's ability to exert undue influence over the child.

[4] At the time, subsection (p)(1) classified the offense as a Class D felony if the person engaged in any fondling or touching with the intent to arouse or satisfy the sexual desires of the child or the person and subsection (p)(2) classified the offense as a Class C felony if the person engaged in sexual intercourse or deviate sexual conduct with the child.

[11] Benner was charged under I.C. § 35-42-4-7(n) and the charges alleged that he, "having *had* a professional relationship" with P.A., committed child seduction between July 1, 2013, and January 9, 2014 for Count I and between August 1, 2013, and January 9, 2014 for Count II. *Appellant's Appendix Vol. 2* at 60 (emphasis supplied). Benner argues that to fit within the definition of "professional relationship," the language of subsection (i) clearly specifies that the person "*is* employed" thereby indicating a current, as opposed to past, professional relationship exists. I.C. § 35-42-4-7 (emphasis supplied). Benner's argument is thus—because he was not employed as the assistant basketball coach at the time of his physical relationship with P.A., he did not have, in the present tense, a "professional relationship" with her so as to give rise to a charge of child seduction under subsection (n). Benner contends that to convict him of child seduction would require evidence of his conduct—his employment as an assistant basketball coach for Mishawaka High School—prior to the enactment of this provision to establish a professional relationship between him and P.A. Benner claims that as applied to him, this is "clearly a violation of the rule prohibiting ex post facto laws." *Appellant's Brief* at 10.

[12] We disagree with Benner's reading of the child seduction statute. Contrary to Benner's claim, the "is employed" language of subsection (i) does not require a current professional relationship at the time the prohibited conduct occurs. Subsection (i) simply defines what constitutes a professional relationship. This determination is made by looking at the nature and circumstances of the relationship at the time the relationship existed, hence the language "is

employed." It is of no moment that this definition did not exist at the time Benner was the assistant basketball coach. It is enough that as of July 1, 2013, Benner was on notice that his previous position as one of P.A.'s basketball coaches might constitute a "professional relationship."[5]

[13] Our reading of subsection (i) is buttressed by the language of subsection (n), which explicitly provides that a charge of child seduction may be based on a person who "has or *had*" a professional relationship. I.C. § 35-42-4-7 (emphasis supplied). The 2013 amendment to the child seduction statute did not criminalize Benner's prior professional relationship with P.A. Rather, subsection (n) criminalized sexual conduct with a child between the ages of sixteen and eighteen occurring on or after July 1, 2013 if the person "has or had" a professional relationship with the child. I.C. § 35-42-4-7. The statute clearly does not limit the criminal offense to a person who is currently in a professional relationship.

[14] We note that the statute is retrospective insofar as the definition of "professional relationship" did not exist at the time Benner was in a position that can now be considered a professional relationship and that in making such a determination, one has to look at circumstances of a relationship that existed prior to the enactment of subsections (n) and (i). In terms of imposing punishment, however, the statute is not retrospective as applied in this case

---

[5] Benner does not dispute that his position as qualified as a "professional relationship" as defined in I.C. § 35-42-4-7(i).

because subsection (n) was in effect when Benner committed the crime—i.e., engaged in a sexual relationship with P.A. over whom he previously "had" a professional relationship. The conduct that formed the basis of the charges against Benner occurred after the effective date of subsection (n). In other words, as of July 1, 2013, the effective date of the addition of subsection (n) to the child seduction statute, Benner was on notice that if he used his prior professional relationship with P.A. to engage in fondling or other sexual conduct with P.A., he could be prosecuted for child seduction so long as P.A. was under the age of 18.

[15] It has been stated that "[t]he critical question in evaluating an ex post facto claim 'is whether the law changes the legal consequences of acts completed before its effective date.'" *See Sewell v. State*, 973 N.E.2d 96, 102 (Ind. Ct. App. 2012) (citing *U.S. v. Brady*, 26 F.3d 282, 291 (2nd Cir. 1994) (quoting *Weaver v. Graham*, 450 U.S. 24, 31 (1981))). Our inquiry is "not whether a legislative change produced a disadvantage for the defendant, but instead whether such change altered the definition of criminal conduct." *Wiggins v. State*, 727 N.E.2d 1, 5 (Ind. Ct. App. 2000), *trans. denied*. Benner, who previously had a professional relationship with P.A., is alleged to have committed child seduction for his conduct occurring after the effective date of the statute defining the crimes for which he was charged. There is no ex post facto violation. *See Teer v. State*, 738 N.E.2d 283, 287 (Ind. Ct. App. 2000) (defendant's conviction of being a serious violent felon in possession of a firearm was not an ex post facto violation where, although defendant

committed the serious violent felony prior to the act's effective date, defendant was charged with possessing a firearm after the statute's effective date).

[16] Benner also argues that the section of the child seduction statute under which he was charged is unconstitutionally vague as applied to him. A criminal statute may be invalidated for vagueness for either of two independent reasons: (1) for failing to provide notice enabling ordinary people to understand the conduct that it prohibits; and (2) for the possibility that it authorizes or encourages arbitrary or discriminatory enforcement. *Brown v. State*, 868 N.E.2d 464, 467 (Ind. 2007) (citing *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999); *Healthscript, Inc. v. State*, 770 N.E.2d 810, 815-816 (Ind. 2002)). "A related consideration is the requirement that a penal statute give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden so that 'no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Id*. (quoting *Healthscript, Inc.*, 770 N.E.2d at 816).

[17] Benner has failed to establish that the statute, as applied to him, is vague. It is immaterial whether Benner knew at the time he was coaching P.A. that he had a "professional relationship" with her. Rather, the relevant question is whether, after the effective date of the statutory amendment, he could determine that he previously had a professional relationship with P.A. when he was her basketball coach and whether such relationship barred him from pursuing a sexual relationship with her on or after July 1, 2013. The definition of "professional relationship" did exist at the time Benner committed the alleged crimes in this

case. Additionally, subsection (n) of the child seduction statute in effect at the time of his alleged crimes explicitly stated that a person who "has *or had a professional relationship* with a child" commits child seduction if the person uses that professional relationship to engage in fondling or other sexual conduct with the child. I.C. § 35-42-2-7 (emphasis supplied).

[18] Because the statute set forth the definition of "professional relationship" and makes it a crime for a person who "has or had a professional relationship with a child" to use that relationship to engage in sexual activity with that child if the child is less than eighteen years of age, we conclude Benner was adequately apprised that his alleged conduct could be prosecuted as child seduction. Benner's claim that the statute is vague as applied to him fails. The trial court did not err in denying Benner's motion to dismiss.

[19] Judgment affirmed.

Kirsch, J., concurs.

Mathias, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| Mark Benner, | Court of Appeals Case No. |
| *Appellant-Defendant,* | 71A03-1607-CR-1609 |
| v. | |
| State of Indiana, | |
| *Appellee-Plaintiff* | |

**Mathias, Judge, dissenting.**

[20] I respectfully dissent because I believe that the State's prosecution of Benner under the version of Indiana Code section 35-42-4-7 that went into effect on July 1, 2013, violates the Ex Post Facto clauses of the United States Constitution and the Indiana Constitution. I also believe that this statute, as applied to Benner, is unconstitutionally vague.

[21] I begin by noting that criminal statutes must be strictly construed against the State. *Herron v. State*, 729 N.E.2d 1008, 1010 (Ind. Ct. App. 2000). Even though an act may fall within the spirit of a statute, it will not constitute a crime unless it is also within the words of the statute. *Id*. With this in mind, I turn to the merits of Benner's claims.

[22] The version of the child seduction statute at issue here provides as follows:

> A person who:
>
> (1) *has or had* a professional relationship with a child at least sixteen (16) years of age but less than eighteen (18) years of age whom the person knows to be at least sixteen (16) years of age but less than eighteen (18) years of age;
>
> (2) may exert undue influence on the child because of the person's current or previous professional relationship with the child; and
>
> (3) uses or exerts the person's professional relationship to engage in sexual intercourse, deviate sexual conduct, or any fondling or touching with the child with the intent to arouse or satisfy the sexual desires of the child or the person;
>
> commits child seduction.

I.C. § 35-42-4-7(n) (emphasis added).[6]

[23] This statute is an exception to the otherwise general rule that the "age of consent" in Indiana is sixteen. *See* Ind. Code § 35-42-4-9 (defining sexual misconduct with a minor as sexual conduct with children under the age of sixteen);[7] *see also W.C.B. v. State*, 855 N.E.2d 1057, 1060 (Ind. Ct. App. 2006) (noting that a victim younger than sixteen cannot consent to sexual contact) (citing *Moon v. State*, 823 N.E.2d 710, 718 (Ind. Ct. App. 2005)); *Salter v. State*,

---

[6] Again, I refer to the version of the child seduction statute that was effective July 1, 2013. The statute was amended again effective July 1, 2014, and yet again effective July 1, 2015.

[7] If the child is under the age of fourteen, the crime is child molesting. *See* Ind. Code § 35-42-4-3 (defining child molesting as sexual conduct with a child under the age of fourteen).

906 N.E.2d 212, 223 (Ind. Ct. App. 2009) (noting that a sixteen-year-old child is old enough to consent to sexual relations in Indiana) (citing *Williams v. State*, 178 Ind. App. 554, 383 N.E.2d 416, 418 (1978) (noting that sixteen years old is the "age of consent."). For better or worse, sixteen has been the age of consent in Indiana for over one hundred years. *See* Burns Annotated Ind. Statutes § 2250 (1914) (defining rape to include "unlawfully hav[ing] carnal knowledge of a woman forcibly against her will, or of a female child under sixteen (16) years of age.").[8] Accordingly, the only thing that made Benner's behavior criminal was his status as a coach.

[24] I acknowledge that Benner has been charged based only on the allegation of a sexual relationship with P.A. that occurred after the effective date of July 1, 2013. *See* Appellant's App. Vol. 2, p. 60-61 (alleging that "between July 1, 2013 and January 9, 2014" Benner, "having had a professional relationship" with P.A., "did use or exert his professional relationship with P.A." to engage in sexual conduct with P.A.).

[25] However, Benner's professional relationship with P.A. ended in March 2013. Several months later, on July 1, 2013, the General Assembly amended the child seduction statute to add a new element to the crime, criminalizing sexual conduct between sixteen and seventeen year olds and those who "ha[ve] or

---

[8] Prior to this, the age of consent was fourteen. *See* Ind. Revised Statutes § 1917 (1898) (providing that "[w]hoever unlawfully has carnal knowledge of a woman forcibly, or a female child under fourteen years of age is guilty of rape . . . .").

*had*" a professional relationship with such minors. The version of the statute that took effect on July 1, 2013, would permit Benner's conviction based on an element that only existed before the effective date of the statute. I believe this element does more than "draw[] upon antecedent facts." *See Sewell*, 973 N.E.2d at 102. This element consists wholly of behavior that occurred before the effective date of the statute. Accordingly, I believe this statute, as applied to Benner, violates the Ex Post Facto clauses of the federal Constitution and Indiana Constitution. *See Pollard v. State*, 908 N.E.2d 1145 (Ind. 2009) (holding that application of residency restriction statute, which prohibited those convicted of certain sex offenses from living within 1,000 feet of school property, youth program centers, or public parks, to defendant who had lived at his house for several years before the effective date of the residency restriction statute, was unconstitutional under the Ex Post Facto clause of the Indiana Constitution).

[26] I further agree with Benner that this version of the child seduction statute is unconstitutionally vague as applied to him. The section of the statute defining the term "professional relationship" provides:

> For purposes of this section, a person has a "professional relationship" with a child if:
> (1) the person:
>> (A) has a license issued by the state or a political subdivision on the basis of the person's training and experience that authorizes the person to carry out a particular occupation; or

> (B) **is employed** in a position in which counseling, supervising, instructing, or recruiting children forms a significant part of the employment; and
>
> (2) the person has a relationship with a child that is based on the person's employment or licensed status as described in subdivision (1).
>
> The term includes a relationship between a child and a mental health professional or military recruiter. The term does not include a coworker relationship between a child and a person described in subdivision (1)(B).

I.C. § 35-42-4-7(i) (emphases added).

[27] This definition is clearly in the present tense, e.g., it uses the term "is employed," not "was employed" or "has been employed." It is undisputed that here, at the time of the conduct alleged in the charging information, Benner was no longer employed as an assistant coach. Thus, he did not fit within the definition of "professional relationship" as set forth in subsection 7(i). But subsection 7(n) sets forth as an element of the crime that the person "has *or had* a professional relationship." This includes both past and present behavior. Ex Post Facto issues aside, this creates a considerable ambiguity in the statute.

[28] This is exacerbated by the language of subsection 7(n)(3) that requires as an element that the defendant "*uses or exerts* the person's professional relationship" to engage in sexual conduct with the victim. Again, this is in the present tense. Thus, the statute, appears to refer to a defendant's *current* status and conduct, but allows conviction for *past* conduct.

[29] In terms of the vagueness analysis, we concern ourselves with a hypothetical "person of ordinary intelligence," not trained lawyers or judges. *Brown*, 868 N.E.2d at 467. This version of the child seduction statute does not give a person of ordinary intelligence fair notice regarding what conduct is forbidden.

[30] Is a consensual sexual relationship with a sixteen or seventeen-year-old person prohibited if one "is employed" in certain positions, as set forth in the definition of "professional relationship," or is it prohibited if the person "has or had" such a relationship? How does one "exert" a professional relationship, especially one that no longer exists? To a person of ordinary intelligence, I believe this is unclear. While the child seduction statute is meant to stop behavior that needs to be stopped, it does not give adequate and accurate notice of the specific connection between the professional relationship between the minor and the adult and the conduct they engage in that may risk criminal liability on the part of the adult. Because it is a criminal statute that must be construed against the State, I believe it is unconstitutionally vague.

[31] In conclusion, Benner's alleged conduct was reprehensible and outrageous. He is alleged to have abused his position as an authority figure to have a sexual relationship with a minor who had once been entrusted to him to coach. However, even generally recognized abhorrent conduct must still be clearly defined under both the Indiana and United States constitutions. Because I believe that the version of the child seduction statute under which Benner was charged runs afoul of the Ex Post Facto clause as applied to Benner and is

unconstitutionally vague, I would reluctantly reverse the trial court's denial of Benner's motion to dismiss.